MARION MANUFACTURING COMPANY v. BOARD OF COMMISSIONERS OF McDOWELL COUNTY, COMPOSED OF J. LOGAN LACKEY ET ALS.

(Filed 24 January, 1925.)

1. Taxation—Statutes—Remedies—Actions—Procedure.

Where a statute prescribes the method for the valuation of property for taxation, and a remedy for the taxpayers who desire to contest the validity of the assessment thereunder made against his property, he must first exhaust the statutory remedy given before he can successfully apply to the court for redress.

**2. Same—State Board of Examiners—Appeal.**

Chapter 12, Laws 1923, provides for the local assessment of property for taxation, among other things constituting certain State officials the State board of assessors to receive complaints as to property that has been fraudulently or improperly assessed, through the county commissioners constituting the local board, and acting through certain designated agencies in certain detail respects, gives express authority to the State Board of Examiners, or any member thereof, "to take such action and do such things as may appear necessary and proper to enforce the provisions of this act."

**3. Same—Pleadings—Demurrer.**

A taxpayer paid his taxes under protest on an assessment of his property by the county board of equalization, ch. 12, Laws of 1923, and in his action to recover an alleged excess he had been required to pay, he alleged that the county board acted arbitrarily and without evidence as required by sec. 70 of said act, and it appeared from his complaint that he had not appealed to the State Board of Equalization in the manner prescribed by the statute: *Held,* a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action was properly sustained.

**4. Same—Public Officers—Mandamus.**

In this action the complaint alleged that upon inquiry made to the State Board of Equalization the plaintiff was informed they were without power to proceed to pass upon the assessment of the local board: *Held,* upon proper application to the State Board and its refusal to act the plaintiff's remedy was by mandamus to compel them to act in the matter under the power conferred by the statute.

CIVIL ACTION heard on demurrer to the complaint before *Webb, J.,* at July Term, 1924, of McDOWELL.

The action is: First, to compel defendants as the local board of revaluation and review to reassess defendant's property on averment that same has been arbitrarily and wrongfully valued to amount greatly in excess of its true value. Second, to recover the amount wrongfully collected on such excessive valuation, same having been paid under protest.

On matter pertinent to the inquiry, the complaint alleges:

"Sec. 3. That the Board of Commissioners of McDowell County, composed of J. Logan Lackey, Chairman, John L. Wilson and E. E. English, were duly elected to office and duly qualified and are now the duly qualified officers filling said office and were on 1 May, 1923, and since that date, under and by virtue of the laws of the State of North Carolina constituted a Board of Equalization in said county of McDowell; that said county board of commissioners, as the law directs, did in April in the year 1923, duly appoint and elect T. W. Wilson as county supervisor of taxes, and did duly appoint tax assessors in every township in McDowell County, North Carolina, and among others,

appointed W. M. Goodson as tax assessor or lister for Marion Township; that in the year 1923, it was the duty of T. W. Wilson and W. M. Goodson to revalue all the real estate in McDowell County, in Marion Township, at its true value; that in derogation of this duty, said supervisor and tax lister, or assessor, valued all of the individual real estate in Marion Township—in fact, throughout the county of McDowell—at sixty per cent (60%) of its true value and the valuation of sixty per cent was placed on the real estate of McDowell County by said supervisor, T. W. Wilson, with the consent, approval and ratification of the Board of Commissioners of McDowell County, acting as the Board of Equalization of said county.

"Sec. 4. That the said T. W. Wilson and W. M. Goodson, arbitrarily and without investigation, placed an assessment on the real property of the plaintiff in the sum of $985,779.00 which is greatly in excess of its true value, to wit, $496,340.00, and when compared with the average valuation of real property of like kind, as the law requires, the excess valuation placed on the said property of plaintiff, as aforesaid, amounts to $359,438.00."

Sec. 5. Contains detailed statement tending to show unfair and excessive valuation by comparison with the valuation of other property in like condition and circumstance.

"Sec. 6. That plaintiff applied to the said T. W. Wilson and W. M. Goodson, officers appointed by the defendant as above set forth, at the time they assessed the real property of plaintiff, for a reduction of the assessed value thereof so as to bring such assessment down to its true value of said property, to wit, $496,341.00; that said Wilson and Goodson thereupon informed plaintiff that they had no way of ascertaining the value of said real estate of plaintiff and that they would therefore return or send up the old valuation, or valuation placed thereon prior to 1923, during the inflated war time prices and values, as the value for 1923, and let the board of equalization fix the value of plaintiff's real estate; that application was duly made according to law to the said Board of Equalization of McDowell County to reduce the valuation of said real estate as certified to said board by said Wilson and Goodson, to its true value; that evidence was produced on the hearing before said board of equalization showing the true value of said property, and that said defendants, sitting as the board of equalization, did make a reduction in the valuation of said real estate in the sum of $130,000.00, but said action of said defendants was entirely arbitrary, made without any evidence whatever (except that produced by plaintiff, as aforesaid, which was uncontradicted and unquestioned), that the defendants arbitrarily refused to equalize the real property of plaintiff with other property of like kind and character, stating that they had no way of ascertaining the value of the plaintiff's real estate.

"Sec. 7. That, as plaintiff is informed and believes, the Commissioner of Revenue, the Attorney-General and the Chairman of the Board of the Corporation Commission of the State of North Carolina, constitute the State Board of Assessment; that application was made to said State Board of Assessment for relief from the arbitrary, inequitable and unjust assessment of plaintiff's property, as above stated, and the plaintiff was informed that said board of assessment had no authority in the premises and that this matter of assessment of real estate of plaintiff was entirely in the hands of the board of equalization, to wit, the defendants in McDowell County.

"Sec. 8. That plaintiff has paid the taxes assessed against it for the year 1923, to the sheriff of McDowell County, but paid same under protest."

Prays judgment that plaintiff's property be reduced from $985,779.00 to its true valuation alleged to be $496,340.00. And, second, that plaintiff recover of defendants $6,110.45, the amount alleged to be wrongfully collected by reason of said unlawful assessment, same having been paid under protest. Defendant demurs for that the complaint fails to state a cause of action generally and in several specified particulars. Judgment sustaining demurrer and plaintiff excepted and appealed.

*Morgan & Raglan, Hudgins, Watson & Washburn and Frank Carter for plaintiff.*

*Pless, Winborne & Pless for defendants.*

HOKE, C. J. It is conceded by appellant that the taxes must be collected in accordance with the valuation and assessment as existent and as fixed by the official board, and that unless this can be properly corrected, no recovery can be had for the moneyed demand by reason of the taxes heretofore paid. *Guano Co. v. New Bern,* 172 N. C., p. 260; *Pickens v. Comrs.,* 112 N. C., p. 699; *Stanly v. Board of Supervisors,* 121 U. S., p. 535.

And as to the other relief sought in the complaint to compel a reassessment of appellant's property by defendants as the local board of equalization, the question is one very largely for the Legislature and in this instance is regulated and controlled chiefly by ch. 12, Laws of 1923, making provision for the assessment of property in the State for purposes of taxation, etc. The statute referred to, in sections one and two constitutes the Commissioner of Revenue, the Attorney-General and Chairman of the Corporation Commission, "The State Board of Assessment," with all the powers and duties prescribed by the act. In sec. 3, various duties are imposed and powers conferred upon the board, clauses 3 and 4 of this section being as follows:

"3. To receive complaints as to property liable to taxation that has not been assessed or of property that has been fraudulently or improperly assessed through error or otherwise, and to investigate the same, and to take such proceedings and to make such orders as will correct the irregularity complained of, if found to exist.

"4. The said board or any member thereof may take such action and do such things as may appear necessary and proper to enforce the provisions of this act."

Again, in section 70 of the act referred to, "the boards of commissioners of the counties of the State are constituted a board of equalization with direction to meet in their respective counties on the second Monday in July to revise the tax lists and the valuations reported to them, and sit until the revision is complete. They shall have power to summon and examine witnesses, shall correct the lists of the list takers and assessors as may be right and just, so that the valuation of similar property throughout the county shall be as near uniform as possible, etc."

From a consideration of these and other pertinent provisions of the law, it is clear, in our, opinion, that the State Board of Assessment is given supervisory powers to correct improper assessments on the part of the local boards and that on complaint made in apt time and on notice duly given and on sufficient and proper proof before this State board, plaintiff could have obtained or had full opportunity to obtain the relief he now seeks. This being true, the judgment of his Honor sustaining the demurrer must be upheld, for it is the accepted position that a taxpayer is not allowed to resort to the courts in cases of this character until he has pursued and exhausted the remedies provided before the duly constituted administrative boards having such matters in charge. *Gorham v. Mfg. Co.,* Current Supreme Court Reporter, U. S., pp. 80, 81. *First National Bank v. Weld,* 264 U. S., p. 450; *Farncomb v. Denver,* 252 U. S., p. 7.

In *Gorham's case, Associate Justice Sanford* states the controlling principle as follows: "We are of opinion that without reference to the constitutional questions, the bill was properly dismissed because of the failure of the company to avail itself of the administrative remedy provided by the statute for the revision and correction of the tax. A taxpayer who does not exhaust the remedy provided before an administrative board to secure the correct assessment of a tax cannot be heard by a judicial tribunal to assert its invalidity."

Our State decisions to the extent they have dealt with the subject are in full approval of the principle, holding that a taxpayer must not only resort to the remedies that the Legislature has established but that he must do so at the time and in the manner that the statutes and

proper regulations provide. *R. R. v. Comrs.,* 188 N. C., p. 265; *Wolfenden v. Comrs.,* 152 N. C., p. 83; *Comrs. v. Murphy,* 107 N. C., p. 36; *Wade v. Comrs.,* 74 N. C., p. 81.

In *Murphy's case, supra, Chief Justice Merrimon,* delivering the opinion said: "The statutes in respect to revenue and taxation contemplate and intend that taxes shall be levied and the collection thereof promptly enforced in the way and by the means and remedies therein prescribed, and no action like the present can be employed to enforce collection until the statutory remedies shall be exhausted."

Recurring to the complaint, it appears from plaintiff's own averments that he appeared in apt time before the local board and procured a reduction of the assessment to the amount of $130,000.00; that no exception to the action of the local board was made at the time, and so far as appears, no appeal was taken or asked for, and no formal and sufficient application has ever been made to the State Board to have the action of the local board reviewed or corrected, but the present suit is instituted to compel the local board to take further action on a matter they had already considered and passed upon more than twelve months before. True, the complaint alleges that "application was made to the State Board and that plaintiff was informed that they were without power in the premises." This was evidently no formal application, but was only by way of inquiry, and if proper application to the State Board had been made and refused, the plaintiff's remedy was by mandamus to compel them to act in the matter under the powers conferred by the statute. *Board of Education v. Comrs.,* 150 N. C., p. 116.

There is no error presented and the judgment sustaining the demurrer is

Affirmed.