LEROY STOCKS, PAUL L. SUTTON, D. E. BAGGETT, ROBERT E. BUTLER, LONNIE M. BULLARD, ERNEST D. PRIDGEN, L. E. MOORE AND CHARLES M. LOVE v. LACY THOMPSON, EDISON BURNS, H. J. WATTS, W. O. JOHNSON AND ROLAND GORE, BEING ALL THE INDIVIDUAL MEMBERS OF THE BOARD OF COMMISSIONERS OF COLUMBUS COUNTY, NORTH CAROLINA, AND THE BOARD OF COMMISSIONERS OF COLUMBUS COUNTY, NORTH CAROLINA, AND J. HUBERT NORRIS, AND MRS. VENIE H. ROUSE.

(Filed 15 May 1968.)

**1. Appeal and Error § 10; Pleadings § 13—**

A demurrer *ore tenus* on the ground that the complaint fails to state facts sufficient to constitute a cause of action cannot be waived and may be taken advantage of at any time, even in the Appellate Court. G.S. 1-134.

**2. Mandamus § 2—**

*Mandamus* is the proper remedy where the act required to be done is imposed by law and is merely ministerial, and where the claimant has a clear right to performance and is without other adequate remedy; but it will not lie where the act to be done involves the exercise of judgment and discretion.

**3. Taxation § 25; Mandamus § 7—**

*Mandamus* will lie to compel the board of county commissioners to include tobacco allotments as an element of value in the appraisal and assessment of county real property for *ad valorem* taxes. G.S. 105-281, G.S. 105-294.

**4. Mandamus § 1—**

*Mandamus* will lie to compel a board or public official to exercise its judgment or discretion, but will not lie to direct the manner in which such judgment or discretion shall be exercised.

**5. Same—**

*Mandamus* will not lie where other adequate remedies are available.

**6. Administrative Law § 2—**

A taxpayer is not required to exhaust his administrative remedies before resorting to the courts when the only administrative remedies available are totally inadequate

**7. Taxation § 25—**

Taxpayers who seek writ of *mandamus* to compel the county board of commissioners to consider tobacco allotments as an element of value in appraising all tracts of real estate throughout the county are not bound to pursue and exhaust remedies before the county board of equalization and review, G.S. 105-327(g)(2), and before the State Board of Assessment, G.S. 105-329, since the requirement of separate taxpayer appeals as to each tract of land would render the statutory remedies practically unavailable.

ON Writ of *Certiorari to* review an order of *Hall,* J., at the October 1967 Civil Term of the Superior Court of COLUMBUS County.

STOCKS *v.* THOMPSON.

Plaintiffs, who are citizens and residents of Columbus County, North Carolina, filed this suit on 26 May 1966 in the Superior Court of Columbus County against the defendants, who are the Board of Commissioners of Columbus County, both individually and in their capacity as Commissioners, the Tax Collector and Tax Supervisor, and the Assistant Tax Supervisor of Columbus County. In substance plaintiffs' complaint alleges: That the defendants are obligated under the pertinent provisions of the General Statutes of North Carolina to include tobacco allotments as an element of value in the appraisal and assessment of Columbus County real estate for *ad valorem* tax purposes; that following the General Election of 1964 the defendant Board of Commissioners directed the appraisal company, which had been employed by the previous Board of Commissioners to appraise Columbus County property for *ad valorem* tax purposes, to cease assignment of any value to tobacco crop allotments and to delete any reference to such allotments on the property record cards of Columbus County; that these actions of the defendant Board of Commissioners had resulted in the complete elimination of tobacco allotments as an element of value in the appraisal and assessment of Columbus County real property for *ad valorem* tax purposes in violation of the laws of the State; and that plaintiffs and others have repeatedly urged the defendants to comply with the law in the matter of these appraisals and assessments and the defendants have uniformly refused to do so. On these allegations, plaintiffs assert that they are entitled to an order of the Court directing the defendants to include the value of tobacco allotments in the appraisal value of all real properties in Columbus County to which such allotments apply.

Upon the filing of the complaint, treated as an affidavit, Judge Henry A. McKinnon, Jr., Judge presiding, signed an order directing the defendants to appear and show cause why the relief prayed for in the complaint should not be granted. In apt time defendants demurred to the complaint on the grounds of misjoinder of parties defendant and for failure to state a cause of action. After argument, Judge McKinnon on 16 June 1966 overruled the demurrer. Defendants then filed answer in which they denied the material allegations of the complaint and in a further answer alleged that in performing their statutory obligation to accomplish a periodic reappraisal of real and personal property in Columbus County for *ad valorem* tax purposes, they had exercised their best judgment. Defendants further alleged that although a specific value on each acre of tobacco allotment was not imposed, general consideration to tobacco allotments was given, and all property in Columbus County, real and

personal, as far as practicable had been appraised and valued at its true value in money as by law required.

After filing answer, the defendants on 25 September 1967 filed a motion to dismiss the plaintiffs' action on the grounds that plaintiffs had failed to exhaust their administrative remedies before bringing this suit, in that plaintiffs had not appealed the appraisal of the Board of Commissioners to the County Board of Equalization and Review as provided by G.S. 105-327, or to the State Board of Assessments as provided by G.S. 105-329. This motion to dismiss was heard by Judge C. W. Hall, presiding at the October 1967 Civil Term of Superior Court of Columbus County, who overruled the defendants' motion. Defendants excepted and petitioned the Court of Appeals for Writ of *Certiorari*. Because of the importance of the questions presented in connection with the administration of the laws relating to evaluation and assessment of property for *ad valorem* tax purposes, we allowed *Certiorari*.

*R. C. Soles, Jr. and W. Earl Britt for defendant appellants.*
*Sherman T. Rock, R. S. Langley, and Wallace, Langley and Barwick for plaintiff appellees.*

PARKER, J. After we allowed *Certiorari*, defendants filed in the Court of Appeals demurrer *ore tenus* on the grounds that the complaint does not state facts sufficient to constitute a cause of action. Since such an objection cannot be waived and may be taken advantage of at any time, even in the Appellate Court (G.S. 1-134; *Howze v. McCall*, 249 N.C. 250, 106 S.E. 2d 236), we shall first consider the sufficiency of the complaint to state a cause of action.

In this action plaintiffs seek the extraordinary remedy of *mandamus*. "The rule is generally stated that *mandamus* is the proper remedy where the act required to be done is imposed by law, is merely ministerial, the claimant has a clear right to performance, and is without other adequate remedy; but it will not lie where the act to be done involves the exercise of judgment and discretion." 2 McIntosh, N. C. Practice 2d, § 2445(3).

Defendants' demurrer challenges the validity of the complaint for failure to state a cause of action on the grounds that: (1) There is no clear requirement of law imposing on defendants the duty to perform the act which plaintiffs are here seeking to require defendants to perform; and (2) In any event the act sought to be required involves the exercise of judgment and discretion on the part of the defendants, and is not merely ministerial in nature. In making these contentions, defendants have interpreted plaintiffs' com-

plaint to mean that the "act sought to be enforced" in this case is the inclusion of a fixed value per acre for tobacco allotments in the valuation of real properties in Columbus County. If that interpretation of the complaint should be correct, then we would agree with defendants that, while the inclusion of a fixed value per acre for tobacco allotments is one of the lawful ways authorized by statute to take tobacco allotments into account as an element of value in appraising real properties for *ad valorem* tax purposes [see G.S. 105-279(3)(e)], there is no requirement of law that this must necessarily be done in that fashion. Defendants have, however, misread plaintiffs' complaint. Plaintiffs' complaint does not allege, and plaintiffs have not asserted in their argument before us, that the defendants are under any legal duty to assign any particular fixed valuation per acre to tobacco allotments. What plaintiffs' complaint does allege is that the defendants have taken certain affirmative actions, the intent and result of which have been to eliminate tobacco allotments altogether as an element of value in appraising real properties in Columbus County for *ad valorem* tax purposes. Plaintiffs seek in this suit to compel defendants, not to assign any particular per acre valuation to tobacco allotments, but to give consideration to tobacco allotments as *one* of the *elements* in the valuation and assessment of real property for *ad valorem* tax purposes. This, we think, the defendants are under a clear legal obligation to do.

G.S. 105-281 provides in part as follows:

"All property, real and personal, within the jurisdiction of the State, not especially exempted, shall be subject to taxation."

G.S. 105-294 provides in part as follows:

"All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. The intent and purpose of this section is to have all property and subjects of taxation appraised at their true and actual value in money, in such manner as such property and subjects of taxation are usually sold, but not by forced sale thereof; and the words 'market value,' 'true value,' or 'cash value,' whenever used in this chapter, shall be held to mean for the amount of cash or receivables the property and subjects can be transmuted into when sold in such manner as such property and subjects are usually sold."

G.S. 105-295 provides in part as follows:

"In determining the value of land the assessors shall consider as to each tract, parcel or lot, separately listed, *at least* its ad-

vantages as to location, quality of soil, quantity and quality of timber, water power, water privileges, mineral or quarry or other valuable deposits, fertility, adaptability for agricultural, commercial or industrial uses, the past income therefrom, its probable future income, the present assessed valuation, and *any other factors which may affect its value.*" (Emphasis added.)

Tobacco allotments under the Agricultural Adjustment Act, 7 U.S.C. § 1281 *et seq.*, have been held to be property rights which should not be expropriated without due process of law, *Austin v. Jackson*, 353 F. 2d 910. The value of a crop allotment under that Act must be taken into account when the land to which the allotment is attached is being condemned by the government. See: *United States v. Citrus Valley Farms, Inc.*, 350 F. 2d 683. Certainly sellers and buyers of farm properties on which there are tobacco allotments, in arriving at their sales price, do give consideration to these allotments when such farm properties are "sold in such manner as such property and subjects are usually sold." And certainly, also, the existence of a tobacco allotment as to any particular tract of land is a factor "which may affect its value." The above-quoted sections of the Machinery Act taken together do, in our view, impose on defendants the clear legal duty, not to assign some fixed value per acre to tobacco allotments (though they may do so should they so elect), but to consider tobacco allotments as *one element* of value when appraising tracts of land to which such allotments apply.

Nor are the plaintiffs here complaining as to the *manner* of performance by defendants of the act here sought to be required of them. Should that be the case *mandamus* would not lie, since the act of appraising clearly involves the exercise of judgment and discretion. Plaintiffs complain, rather, that defendants have refused to exercise their discretion at all. *Mandamus* will lie, not to direct the manner in which defendants shall exercise their judgment and discretion, but to require that they do exercise it.

Defendants in their answer have denied the allegations of plaintiffs' complaint, and in their further answer have averred specifically "that although a specific valuation on each acre of tobacco allotment was not imposed, general consideration to tobacco allotments was given; and all property in Columbus County, real and personal, as far as practicable has been appraised and valued at its true value in money as by law required and specifically in compliance with G.S. 105-294."

Whether upon a trial of the facts plaintiffs or defendants will prevail in proving their conflicting allegations, remains to be seen. For present purposes of considering defendants' demurrer *ore tenus*,

the allegations of plaintiffs' complaint must be taken as true. When so considered, plaintiffs have stated a good cause of action and defendants' demurrer should be overruled.

In addition to the objections raised by demurrer, defendants moved to dismiss plaintiffs' action on the grounds that plaintiffs failed to exhaust their administrative remedies before seeking the assistance of the Court by way of *mandamus*. It is true that *mandamus* will not lie where other adequate remedies are available. Defendants' motion thus raises the question of whether, in the context of the factual situation alleged in the complaint, other adequate remedies were available to plaintiffs.

G.S. 105-327 constitutes the Board of County Commissioners of each county a County Board of Equalization and Review. Subsection (g)(2) of that section provides:

> "The board shall, on request, hear any and all taxpayers who own or control taxable property assessed for taxation in the county in respect to the valuation of such property or the property of others. Any such request must be made in writing to or by personal appearance before the board prior to adjournment of the board, or within fifteen days after notice is mailed by the board of a change in valuation made by said board if the notice of change was mailed less than fifteen days prior to adjournment of the board. The board shall notify any such taxpayer by mail as to the action taken on his request no later than 30 days after adjournment of the board."

G.S. 105-329 provides for an appeal from a decision of a County Board of Equalization and Review to the State Board of Assessment. This section provides, however:

> "Each taxpayer or ownership interest shall file separate and distinct appeals; no joint appeals shall be considered except by and with consent of the State Board of Assessment."

G.S. 105-273 provides for the creation of a State Board of Assessment, and G.S. 105-275 specifies the duties of such Board. Subparagraph 3 of this section is as follows:

> "(3) To hear and to adjudicate appeals from the boards of county commissioners and county boards of equalization and review as to property liable for taxation that has not been assessed or of property that has been fraudulently or improperly assessed through error or otherwise, to investigate the same, and if error, inequality, or fraud is found to exist, to take such proceedings and to make such orders as to correct the same. In

STOCKS *v.* THOMPSON.

case it shall be made to appear to the State Board of Assessment that any tax list or assessment roll in any county in this State is grossly irregular, or any property is unlawfully or unequally assessed. as between individuals, between sections of a county, or between counties, the said Board shall correct such irregularities, inequalities and lack of uniformity, and shall equalize and make uniform the valuation thereof *upon complaint by the board of county commissioners* under rules and regulations prescribed by it, not inconsistent with this subchapter: Provided, that no appeals shall be considered or fixed values changed unless notice of same is filed within sixty (60) days after the final values are fixed and determined by the board of county commissioners or the Board of Equalization and Review, as hereinafter provided: *Provided, further, that each taxpayer or ownership interest shall file separate and distinct appeals; no joint appeals shall be considered except by and with consent of the State Board of Assessment."* (Emphasis added.)

The statutes quoted do provide the administrative channels through which an individual taxpayer may question and obtain review of the appraisal of his own or of some other taxpayer's property. Unless he has done so, he may not resort to the Court, "for it is the accepted position that a taxpayer is not allowed to resort to the Courts in cases of this character until he has pursued and exhausted the remedies provided before the duly constituted administrative boards having such matters in charge." *Manufacturing Company v. Commissioners,* 189 N.C. 99, 126 S.E. 114. In this case, Chief Justice Hoke, speaking for the Court, said:

"Our State decisions to the extent they have dealt with the subject are in full approval of the principle, holding that a taxpayer must not only resort to the remedies that the Legislature has established but that he must do so at the time and in the manner that the statutes and proper regulations provide."

An individual taxpayer, seeking review of the appraisal of a particular piece of property, whether his own or another's, has a clearly defined and entirely adequate remedy. Citizens, as plaintiffs in this case, who seek not a review of the appraisal of any particular piece of property, but to require the County Commissioners to comply with the law and consider tobacco allotments as an element of value in appraising all tracts throughout the entire county, have no such clearly defined or adequate remedy. If a particular tract, chosen perhaps as a test case, had been presented for review through statutory administrative channels, the plaintiffs might have been entirely

successful and still fail of their real objective to have tobacco allotments considered as an element of value applicable to all tracts throughout the county.

Separate proceedings as to each such tract would make a multiplicity of proceedings and place such a burden upon the plaintiffs that the remedy would be not only inadequate but practically unavailable.

That the Board of County Commissioners are given the right by G.S. 105-275(3) to complain directly to the State Board of Assessment in any case where "any tax list or assessment roll in any county in this State is grossly irregular," is of small comfort to citizens situated as were the plaintiffs in this case, whose grievance is against the Board of County Commissioners itself. No such clearly defined right of direct access to the State Board of Assessment to review an entire tax list is spelled out as being available to individual citizens.

Where the only administrative remedies provided are so totally inadequate, citizens are not required first to exhaust them before resorting to the Courts in order to compel public officials to perform their legally imposed duties.

Defendants' demurrer *ore tenus* filed in this Court is overruled, and the judgment of the Superior Court overruling defendants' motion to dismiss is

Affirmed.

CAMPBELL and MORRIS, JJ., concur.